Ted Philbin Okay. General Petrany. Thank you, Your Honor. May it please the Court. Two uncontroversial legal principles are all the Court needs to decide this case. The first is that in any claim for deliberate indifference, for failure to provide some putative medical treatment, that medical treatment has to be medically necessary. The second principle is that it is the plaintiff's burden to prove that it is medically necessary. Now, in this case, the District Court seems to have understood the first principle and, in fact, even correctly held that Plaintiff Bayse had failed to provide any evidence of the medical necessity of feminine cosmetic items. But the District Court went off the rails when it then held that the defendant prison officials could not have summary judgment because they failed to prove the lack of medical necessity. It's not just qualified immunity. Your position is that the burden lies with the prisoner. And our Hoffer decision squarely holds that the burden is always on the prisoner to assess. Yes. Absolutely, Your Honor. Actually, even if it weren't a qualified immunity question, I still think the burden is on the plaintiff, but it certainly is here. Your position in Rosella, Texas, simply, once you come forward with a summary judgment motion saying there's an absence of evidence, they are required to present some evidence. And here, the District Court was clear that there wasn't any. There wasn't any. No, they come back and say that there are two pieces of evidence they point to. They're the same ones the District Court addressed, and if you can address those, I think that would be helpful. Yeah. So the two pieces of evidence are this one treatment plan from the previous prison and, you know, basically just an unadorned, unexplained policies of WPATH. So as to the first one... Don't go to the District Court to... Yes. Yes. And I would go so far as to say there really aren't evidence of medical necessity at all. The first one is not evidence of medical necessity, at least because it just — just because it includes something doesn't mean that it's medically necessary. There are all kinds of things a doctor, physician, medical provider might provide that aren't necessary but are just helpful. Is there anything in there to suggest that what you just said — I agree with you as a matter of logic that that's true. But is there anything even in the record, for instance, in Georgia prison policies, that indicate that sometimes people are given things beyond that which is just bare minimum necessary? Well, two points there, Your Honor. The first is any absence in the record is plaintiff's problem, not our problem. But the second is I'm not sure there's a policy that would say that. I mean, these are medical — these are medical providers who are saying, you know, these things would be helpful. You know, so if a medical provider says maybe you should take some Tylenol, you know, that's not necessarily medically necessary. You know, you have a headache, Tylenol might be helpful. It doesn't mean that there's a substantial risk of serious injury if you don't take the Tylenol. So, no, I don't think I can point to a prison policy that specifically says not everything that a doctor says is medically necessary. I just — I don't know why you would have a policy like that. But then moving on to the second supposed piece of evidence that, again, the district court already handled, the WPATH standards, just for the moment, assume that they are the gold standard in this area. They don't say anything about this particular case. They just say that in certain circumstances, sometimes certain things might be helpful. That is not evidence at all specific to Bayes. And that's before you even get to the fact that Bayes did nothing to establish WPATH as a reliable medical organization in the first place. The district court also just misread the record about something and discredited the declarations of the mental health providers that the defendants filed as post hoc rationalizations. And it appeared to me that the mental health director, Donna Young, had corroborated those declarations. Yes. By determining that these were not medically necessary accommodations before Bayes filed this lawsuit. Oh. And it appears to me that the district court just entirely overlooked that. And that was just a record mistake on the part of the district court. So that's absolutely true, Your Honor. So not only was this prior to this lawsuit, it was prior even to the meeting that Bayes put so much weight on. You know, Bayes' argument is that at this meeting, you know, the medical providers and the prison officials got together and somehow conspired to, you know, to hurt him somehow. That was June 12th. The witness response to a grievance from Donna Young was June 10th. This is document 55-2 at 202. That already declares as of June 10th, 2020, two years before this suit is filed, that this is not part of your treatment plan. She identifies the March 2020 treatment plan as not including these items. And by the way. Well, a more fundamental question. The Eighth Amendment is supposed to be about ensuring that the inmate gets life's necessity. This is a prohibition of cruel and unusual punishment. Not, you know, what you'd like folks to have necessary, but what they have to have. Life's necessities. Can makeup, long hair, earrings, and nail polish ever be categorized as that? No, absolutely not, Your Honor. In a women's prison, they could deny you those. Absolutely, Your Honor. And that would not be a violation of the Eighth Amendment. No, absolutely, Your Honor. And of course, we're not saying that the court has to make that holding here in order to rule for us. But I think it would absolutely be appropriate to do so. Especially because this keeps coming up. And every single time, the State has to establish once again. Look, at the very least, there's a debate about whether these things are necessary or not. And that's what, by the way, makes this case even easier. Is that it's not just that Bayes failed to put in any evidence. If there's even a debate, it's not medically necessary. That's what Hoffer says. That's what Keohane says. The District Court also cited unpublished authorities. And I mean, I don't know how much clearer we have to be about what has to be clearly established. It's true that we recently clarified something in the obvious clarity situation. But otherwise, we feel that qualified immunity and clearly established law is established by precedent. Not unpublished decisions. Absolutely, Your Honor. The District Court was not making an obvious clarity determination. I mean, the District Court could not have possibly made an obvious clarity determination. So you need to establish that there's some precedent on point. And by far, the most on point precedent, Keohane, goes the other way. Holds the exact opposite. Even in, oh, in that case, the plaintiff had produced plenty of evidence of medical necessity and had gone to trial and had a judge and a bench trial say, I believe the plaintiff's expert witnesses. And I, yeah, exactly. And so, yes. So the only case that's published that really kind of gets close to these facts goes the opposite way. And no one has identified any, any precedential decision, or honestly, we go into this further in our brief, even a non-precedential decision, but certainly not a precedential decision with similar facts that establishes that these officials should have had notice. Keohane. The first is your opposing counsel points to a portion of it which seems to indicate that blanket policies, that denials based on blanket policies can be unconstitutional because there isn't an individualized assessment. And they indicate that that is what happened here, pointing to the warden's statement about policy prohibiting these sorts of things. Yeah, so as a matter of fact, and I'm not going to dwell on this, but there was no policy at the time prohibiting these things. But as a matter of law, that is not what Keohane says. I mean, setting aside that it explicitly says this is dicta, what it was talking about was a freeze-frame policy whereby the Florida Department of Corrections would not even examine the issue. They would just say, whatever you were doing before, we're going to keep doing that now. They weren't looking at particular treatments. They weren't looking at particular individuals or anything. There's nothing in Keohane, and there's no reason for it to have gotten into this question, as to whether States can make categorical judgments about whether certain treatments are ever viable. It's absolutely the case that a State can just say across the board, we are not providing this thing because we don't think it's efficacious ever, or something like that. That does not show deliberate indifference. That shows deliberate thinking about the question. And I don't think Keohane can possibly be read for more than what it explicitly said on that point. My second question, again, is after Wade, what value does that opinion serve on the issue that's not dicta, the issue that is what we have here, for the clearly established problem? Because it seems to me that we relied very much in Keohane on the presidential portion, the non-moot portion, on the mere negligence part that we specifically said was not appropriate in law in the primary to Farmer and Wade. Well, so Wade actually elevated the requirements. Instead of saying it's more than negligence, it has to be criminal recklessness. So if anything, Keohane is more relevant than it used to be because it's saying, well, we have a precedent on the book saying you haven't even established more than negligence, much less criminal recklessness. So I think at the very least, Wade does not affect that portion of Keohane. Again, I think in general, Wade is only, when it comes to qualified immunity, can only really help defendants, not hurt them. If the Court has any other questions, I'm happy to answer them. Otherwise, I'll save my time for rebuttal. Thank you. Sorry, I'm a little spread out, Your Honor. Good morning. May it please the Court, my name is Rachel Grossman for Appellee Robin Amanda Bays. The law is clearly established as a general legal principle that prisoners with serious medical needs, including gender dysphoria, have a right to medically necessary care. Here, the prison doctors at Georgia State Prison diagnosed Ms. Bays with gender dysphoria, and to treat it, they prescribed social transitioning accommodations. The district court determined a reasonable jury could find social transitioning was medically necessary, and it cited evidence for that, including evidence that was not addressed by my colleague here, including the affidavits themselves that defendants submitted at summary judgment. And it discussed those affidavits extensively in the record. The heart of the dispute, I think, is actually what comes next when Ms. Bays was transferred to Augusta State Medical Prison. Officials there didn't want to accommodate the social transitioning accommodations for whatever reason. And so they told her prison policy prohibited it, even though I think, as my counsel said, that was wrong. I think there's two pieces of evidence that my colleague referenced. There are the medical provider affidavits that are discussed at length at the report and recommendation, pages 17 and 18. And then there's this piece of evidence from the response to the grievance that I think Your Honor might be referencing. First of all, that was not part of the record that was pointed to at summary judgment. So this was ECF 55-2 or something like that. That was submitted at the motion to dismiss phase, and so it wasn't brought to the Court's attention. It's in the larger record, but it wasn't presented to the Court. Those other declarations that they're post hoc rationalizations. And when you look at this, it appears they're not. Yeah, so I think that that piece of evidence is actually a little bit more ambiguous than it's been presented. It's a response to a grievance request that is itself dated from June 10th. So this is in that same period where there's the series of meetings at which Ms. Bays was going back and forth with officials at Augusta State. They were talking to her about why prison policy prohibited this care. And what the grievance response actually says is that they were amending her plan in the process to match policy. So that suggests that whatever the plan was in place, and there's not actually a plan from March in the record. It's not quite contemporaneous. It's just this note from the mental health coordinator that suggests that the plan is actually in the process of being updated. I want to add a little bit, because we're a little further into the weeds than I think we need to be. So I'd like to start where I think your opposing counsel started, which is there are two legal principles that are at play here. The first is the burden-shifting framework of summary judgment and, as the Chief Judge said, on qualified immunity. So here the defendants came forward in summary judgment and says there is an absence of evidence on the first prong. We'll call them the objective and necessity prong. And at that point, it is incumbent upon the plaintiff to then present some evidence. Do you agree with that? Yes, I agree that Celotex says they don't have – you know, we have the burden of proof at trial. And the district court was wrong about that and what it said about the burden. I don't think the district court got the legal principle wrong, and I think that the district court's legal analysis is right on this. And, again, I want to point your honors to the fact that there's more than these two pieces of evidence of medical necessity in the record. So let's assume that I don't – I agree with the district court that the magistrate judge adopted by the district court that neither of the two pieces that we discussed and were discussed in the order are sufficient to meet your burden. What else is there? So, again, there's the – there's the affidavits from the mental health providers at Augusta State Medical Prison. I'm wondering how the way they filed affidavits, and those affidavits are post hoc justifications that I don't believe, can be affirmative evidence to support your client. So the district court, and the magistrate judge in particular, didn't find that the affidavits were totally wrong and could be thrown out. What it found is that the affidavits themselves put the issue of medical necessity in dispute. So two points on this. I'm sorry. How can a statement, this is not medically necessary, put in dispute that this is medically necessary? It's one thing to disregard the affidavit. That, again, I don't get it. How can that then be affirmative evidence in support of you for meeting your burden, which is not insubstantial at summary judgment? So, again, the magistrate judge explains this. This is on page 17 of the report and recommendation. It talks about how the affidavits start from, quote, the false premise that the GDC policy prohibited social transitioning as a matter of, like, just period. It's not available on the record. It also addresses the fact that the medical affidavits talk specifically about the secondary or primary diagnosis of borderline personality disorder without talking about gender dysphoria. It talks about some of the social transitioning accommodations without addressing all of them. So there's, again, there's a two-page analysis of. So with regard to whether it's a blanket policy or not, that goes not to the objective prong, but to the subjective prong. So that doesn't meet evidence for the objective prong. Regarding any failure to adopt or failure to discuss any social transitioning accommodation issues, that goes to the failure of them to present any evidence and not to you, personally, but the plaintiff's failure to present any evidence. I just don't. I'm having trouble understanding how any defects in the affidavit, and I'll assume all the ones you've just stated, any defects in the affidavit the defense presented could possibly support affirmative evidence for you on that first medical necessity prong. Yes. So, again, Your Honor, I think that the district court was doing the right thing, which was looking at all of the evidence that had been presented on these cross motions for summary judgment, including these affidavits from the medical professionals. The district court can look at the entire record. And if the affidavit had said, one of them, that I believe in some circumstances these things could be medically necessary and here they were, at least in Georgia State Prison, maybe that would be enough for you. But I don't see the exact opposite. Yes. So there, again, I think the record as a whole helps here. I think that the other key piece is that Ms. Fays was pro se up until this appeal was filed. Ms. Fays did not have the benefit of me and my counsel assisting her in accumulating the evidence. And there is a slightly different, there's sort of a twist in what the district court is allowed and supposed to look at when a prisoner is proceeding pro se at this stage. So I do think it was appropriate for the district court to consider the affidavits and, again, not to decide whether the affidavits were right or wrong, but to note that the affidavits put this issue in dispute. And then to construe the facts in Ms. Fays' favor, which is the correct way to proceed at summary judgment, and ask the legal question, if a jury were to find this set of facts, does that violate clearly established law? And it fits pretty clearly into this general legal principle that when you have a, when you know you have a prisoner with a serious medical need and you know that there is treatment that is required for that need, if you just withdraw that care without justification, without medical, you know, some other medical reason, without providing a backup plan, that's an Eighth Amendment violation. And there is, and to your point, Judge Pryor, there is cases in the record that the district court cites, that we cite as well, that are published decisions that lay this out very clearly, not just Keohane, in fact, including Greeson, including Ancada, that has been cited by this Court post-Wade. I think, Judge Brasher, you cited Ancada just recently. I think you make a good point there. I mean, you agree this is not a case where there's, like, a precedent on point. That's not your argument. And it's not a case with obvious clarity. Your general legal principle. That's right. We're in the general legal principle category, which is one of the ways you can have clearly established law. And that general legal principle, again, is you have a serious medical need. The facts can change about what that need is. You have a The district courts, in this context, should not be citing district court opinions and unpublished decisions of this Court. I understand your Honor's concern. I think that even those district court cases, then, within them, cite published decisions. I know that that's Citing a published decision, you know. Sorry if I could have rewritten that opinion. You know, in counsel. Yeah. So, but I think, again, the district court's analysis here is sound. It looked at the facts. It looked at the entire record. It found all of these. There were genuine issues of dispute on all of these material facts, including medical necessity. It then construed these facts in Ms. Faiz's favor and asked the question, does that violate clearly established law? That is exactly the correct legal analysis that the district court was supposed to perform at this stage. And this is kind of similar to the argument we just had. So the magistrate judge said, I think it was the magistrate judge, said that Bays failed to submit any evidence of medical necessity. What are you, what are we supposed to make of that statement? I respectfully disagree with that opinion from the magistrate judge. But your, your role as this Court is not to disturb the Court's factual findings. And so, again, I want. So I guess, I guess just to. Yes, de novo review. But, I mean, we have, we have a judge saying there's, you know, we have the same thing and it's sort of doing something different. Well, again, I think that the judge could legitimately and probably, in fact, did rely on this other evidence beyond the GSP plan, beyond the WPATH standards, and looked at the statements that, the statements that defendants themselves were making. I think part of the framework that is a little bit harder to see on this appeal is that there's two sets of defendants below. There's medical providers and there are officials. And there's a little bit of finger pointing going on here that is lost right now because we've only got one set of defendants on appeal. So the medical providers are saying, look, we did this because of policy. And the official defendants, understandably, are saying, look, we did this because of the medical providers. I think in that context, it is entirely understandable how the district court reached the opinion that there's a dispute about medical necessity. And then, again, performed the correct legal analysis. It construed all the facts in Ms. Bay's favor, plugged it into the general legal principle about how deliberate indifference worked, and concluded that we needed to proceed to trial in this case. I do want to address one additional item that was raised in the briefing for your honors. Wade was mentioned very briefly by the panel a moment ago in terms of criminal recklessness. I submit that the findings below are sufficient to show that there are at least reasonable factual disputes about whether criminal recklessness is satisfied in this case. I think that they are. And I think that you can read the district court's findings to support that. Despite the fact that the district court was using pre-Wade language about negligence, that's because, of course, this is a pre-Wade decision. We're here de novo. So we understand what Wade says. And so we've just got to make our own determination de novo based on this record whether qualified immunity is appropriate or not. So I will add one caveat, Your Honor, which is just that the de novo is as to the legal conclusion regarding qualified immunity, so whether there is clearly established law. It's not quite de novo in terms of the fact findings. So the correct standard of review there is related to that. This is a motion for summary judgment. Well, this is an appeal from a motion for summary judgment that was denied. So ordinarily, you wouldn't have jurisdiction over a denial from summary judgment. You have your jurisdiction. The question is, based on this record, are the defendants entitled to judgment as a matter of law that they enjoy qualified immunity from this complaint? That's the legal question. So, yes, the legal question is reviewed de novo. What you said, Your Honor, in Nelson is that if there is any record evidence to support the district court's fact findings. In Nelson, what the defendants were arguing was the district court was wrong to say that this created this inference, that this evidence leads to this reasonable inference, as opposed to, I'll grant you every inference, we still win. With respect, Your Honor, I think that that is sort of the argument that the defendants are presenting here, which is that, again, please overlook the affidavits and sort of rejigger the facts a little bit and decide, no, in fact, the district court didn't decide that social transitioning could be medically necessary. I think that they are respectfully asking you to reassess the facts that the district court found. The affidavits specifically state that this treatment was not medically necessary. No. What I'm asking you to do, Your Honor, is to consider that the district court weighed, looked at those affidavits. And that was a poor use of phrase. Because what the district court actually found is that the affidavits could go either  So what it was actually doing was explicitly trying not to weigh the affidavits and to say. Well, and again, Your Honor, I think that that grievance response is more ambiguous than it sounds like from the face of defendants' briefs. And I ask that you look at that, which discussed trying to change the treatment plan in response to the policy. I want to address, if you, I know I'm almost out of time, this idea about disputed medical opinions. I think that there is a difference between a disputed material fact as to what our second set of doctors felt or believed was necessary versus a dispute that is post-trial as in Keohane, where the doctors on the record have decided, you know, we disagree about what's appropriate here. We have a dispute of material fact, not disputed evidence that's in the record. And I think that that is a material difference for our purposes. Thank you. Thank you. Thank you, General. Yeah, before you start, I would like you to address this issue, which goes to our jurisdiction over this interlocutory appeal of what is the legal question that we're supposed to be answering here? Because it does seem like a lot of your argument boils down to the idea that the district court, magistrate judge, sort of inferred a fact about medical necessity that they shouldn't have inferred. There are a number of legal questions, Your Honor. And just as a background here, what Nelson said, and this is absolutely correct, is that once you have a legal question, you can also address evidence-based efficiency questions. It just can't be the only thing that you're looking at. So I want to start with that. The first legal question is, whose burden is it? That's a purely legal question. Here's another question. When there is a dispute about medical necessity, can there be liability? Purely legal question. Should the district court have looked at subjective criminal, well, actually, I admit that it's pre-weight, but should the district court have looked at the subjective prong of deliberate indifference? Didn't do that. Purely legal question. I could go down the line, but there are a number of completely purely legal questions. It is true that both in my colloquy with Your Honors and in my opposing counsel's argument, we've gotten into the facts, but that's because Bays is trying to rehabilitate the district court's order. It's not — I'm not coming to you and saying the district court got all the facts wrong. I'm coming to you and saying the district court actually said the right thing about the facts and had the wrong legal standard. So let's get into that, if you don't mind. So I tried to probe as much evidence as I could from your opposing counsel, and it seems like it rises and falls on your — not you, but the affidavits of your clients and the affidavits they presented in support. I disagree entirely. It does not rise and fall with those affidavits at all. Take them out of the case. It doesn't matter. There's no evidence of medical necessity. It doesn't — there's — These are points in the case. They are in the case. And if they're in the case, then the district court has to not weigh them, but consider them. The affidavits said that these were not medically indicated. There is no way you can get from affidavits saying this is not medically indicated that somehow they are medically indicated. And even if you did that, that just means that there's some sort of dispute about medical necessity in the case, which means, again, no liability. And I want to address very quickly the idea that the district court, through the magistrate judge, did this correctly and did the right legal analysis. This is the heading, the magistrate judge's heading on page 17. Reasonable jurors could find defendants failed to establish social transitioning accommodations were not medically necessary. You can't — you cannot take from that that the district court did this in the correct way. It plainly did not. Now, I do want to talk about a little bit, just to give the Court comfort here on the opposite thing. My opposing counsel is just wrong about the Young statement on June 10th. It specifically identifies we had this March 2020 treatment plan. Of course, the Court can read it for itself, but it's already referring to a treatment plan that is already in place. Also, not that it matters, but — A is referring to the new comprehensive treatment plan. Yes. And not that it matters, but Bays admitted in a deposition that the only treatment plan in 30 years that he'd received that includes feminine cosmetic items, social transitioning items, was this single one from 2019. There was a previous case. Bays filed another lawsuit seeking social transitioning accommodations, and it was rejected. So the idea that somehow, you know, there was evidence of this, you know, hiding somewhere is wrong. But even if that were true, there's clearly a dispute as to whether it is medically necessary. The documentary 55-2 at 202, the one you're referring to, of Ms. Young's statement from June 10th. Yeah. Your Honor, off the top of my head, I think it was. But I'm not 100 percent sure, but it's part of the record one way or the other. Well, part of the record or a summary general record, I think, are two different things. But your opposing counsel seems to suggest that it was attached as part of the litigation on the failure to exhaust, as part of the motion to dismiss phase of this, and not submitted as part of summary judgment. Assuming that is the case, what do we do with that? Assuming that's the case, it doesn't matter. I mean, the point is, take that out, take the affidavits, take any evidence we put in at all out of the case, and it does not matter. Because there is no affirmative evidence of medical necessity. So I don't think the Court has to. I mean, I would, candidly, I do recall it being part of the summary judgment record, but I can't recall off the top of my head. But even if it weren't, it just doesn't matter. And then Can I ask a question on the first prong? So we're really, I think we've been mostly focused on that, and I think that is where the case really falls. Is the first prong the medical necessity, the underlying illness or diagnosis, or is it the deprivation of the specific treatment for the illness or diagnosis? It's absolutely the latter, Your Honor, and Wade was very specific about this. The point is, you're trying to It is not yours. No, admittedly, yes, I agree with that, Your Honor. But Wade was very specific about this, and it also is the only thing that makes sense from a first principles perspective. You're trying to figure out whether the act or inaction that a particular person took or did not take was, in fact, necessary. Was it going to lead to a substantial risk of serious harm? Just saying in the abstract someone has cancer or in the abstract someone has gender dysphoria doesn't get you to whether the specific act was medically necessary one way or the other. I see my time has expired. Obviously, I can answer any other questions Your Honors have. Thank you. Thank you. Thank you.